# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM J. JENKINS,<br><br>  Plaintiff,<br><br>v.<br><br>ROB JEFFERY, ILLINOIS DEPARMTENT OF CORRECTIONS, WARDEN #1 of B.M.R.C.C., WARDEN #2 of B.M.R.C.C., PROPERTY STAFF 3/31/2021-12/31/2021, and PROPERTY STAFF 1/1/2022-3/31/2022,<br><br>  Defendants. | Case No. 23-cv-270-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff William J. Jenkins, a detainee at the Will County Adult Detention Facility, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while he was incarcerated at Big Muddy River Correction Center ("Big Muddy"). In the Complaint, Jenkins alleges Defendants interfered with his access to the courts in violation of the First and/or Fourteenth Amendments.[1]

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

---

[1] Jenkins also submitted two affidavits (Docs. 10, 13), supplemental evidence (Doc. 11), and a list of witnesses (Doc. 12), but the Court does not accept piecemeal amendments to the Complaint. And Jenkins is not required to file all of his evidence on the docket. To the extent Jenkins seeks to file the exhibits as supplements to the Complaint, that request is **DENIED**.

1

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Jenkins makes the following allegations: While incarcerated at Big Muddy in December 2020, Jenkins received a new trial on appeal in his criminal case, Case No. 11-CF-2122 in Will County, Illinois (Doc. 1, p. 5). As a result of his appeal, Jenkins was remanded back to the jurisdiction of the Twelfth Judicial Circuit of Will County, Illinois. On March 31, 2021, Jenkins transferred from Big Muddy to the Will County Adult Detention Facility (*Id.* at p. 6). He was not allowed to take any of his legal boxes with him when he left Big Muddy. The warden at Big Muddy, as well as "property staff members," informed Jenkins he had one year to claim his property from the facility. Jenkins alleges that he was required to claim his property because his criminal case was a "reverse and remand" case (*Id.*). Jenkins transferred back to Will County for his trial without any of the documents relevant to his criminal case (*Id.* at p. 7). Because he lacked access to any of his documents, Jenkins alleges he was unable to prepare a proper defense and forced to take a plea agreement (*Id.* at p. 7). On May 19, 2021, Jenkins pled guilty to residential burglary on the advice of his public defender (*Id.*).

Jenkins alleges that he and his mother tried to obtain the legal documents from January through March 2022 but were unable to secure his documents (*Id.* at p. 8). Jenkins alleges if he had access to his legal documents, he could have properly prepared a post-

conviction petition and withdrew his guilty plea (*Id*.). He acknowledges, however, that he filed a post-conviction petition but is now "forced to deal with a conflict of interest by having the Will County Public Defender's Office defend [his] case instead of fighting [his] case *pro se* with [his] legal documents," which staff at Big Muddy have been unable to locate (*Id*. at p. 10). On March 17, 2022, he filed a motion for subpoena in his criminal case in an effort to obtain his documents from Big Muddy, but the judge ignored the motion until the deadline for obtaining his documents passed (*Id*. at p. 8). Jenkins believes that his documents were destroyed sometime after March 31, 2022, which represented one year after his release from Big Muddy.

Jenkins also alleges that his plea agreement was improperly agreed to by the public defender. Jenkins believed that his previous incarceration would be credited towards six years of his sentence and three years of parole, allowing him to leave the state once he served his sentence (*Id*.). Jenkins alleges that, instead, the credit for his previous incarceration only went towards his sentence, and he now has to serve three years of parole in the state after his release (*Id*. at pp. 7-8). As a result of the incorrect calculation by the court and his public defender, Jenkins maintains he remained in Illinois. On November 18, 2021, he was shot nine times by a police officer and is now facing another criminal charge (*Id*.).

Jenkins alleges that "property staff members" at Big Muddy violated his rights by "com[ing] up with every excuse" for failing to turn over his property (*Id*. at p. 9). Jenkins alleges that he was told that he took the property with him and, later, that they were unable to locate any property in the warehouse (*Id*.). Jenkins alleges that the wardens of

Big Muddy are responsible for maintaining legal documents/property and failed to do so in this case. He also alleges Rob Jeffreys and IDOC are "responsible for the enforcing and implementing this 1-year policy on inmates" who are remanded from IDOC custody (*Id*. at pp. 9-10).

## Discussion

Simply put, Jenkins fails to state a claim. Jenkins alleges that his right to access the courts was impaired when officials at Big Muddy failed to provide him with his legal storage boxes, indicating that they were not in Big Muddy's possession. As a result, Jenkins alleges he was unable to properly prepare his legal defense, was forced to take a plea deal, and now is unable to properly prepare a post-conviction appeal.

Inmates have a "constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977). "The mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013). The complaint must allege the connection between the denial of access to legal materials and the inability to pursue a legitimate legal challenge. *Marshall,* 445 F.3d at 968. Further, liability under Section 1983 requires personal involvement in the deprivation of a constitutional right. *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009).

Here, Jenkins fails to allege any personal involvement in the destruction of his legal documents by any of the named defendants. He alleges that "the warden and

4

property staff members" informed him that he had one year to obtain his property boxes at Big Muddy and that "they" have come up with every excuse as to why he cannot obtain his property (Doc. 1, pp. 7, 9). But Jenkins merely alleges that the wardens are responsible for maintaining legal documents. There are no allegations to suggest how either unknown warden participated in the destruction of his legal documents. Nor can they be liable simply for their positions as wardens because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Further, he fails to point to a specific property officer and, instead, points to "staff" who worked during the year he sought his documents. Although Jenkins may certainly allege claims against identified John Does (i.e., John Doe #1, John Doe #2), he includes generic groups of property staff. These claims are too generic to survive threshold review because he does not describe the staff members that he spoke to seeking his documents, nor state the number of them. Jenkins may identify a defendant by a John Doe designation, but he must identify them by number and description. His generic referral to staff who worked "from 3/31/21 – 12/31/21 and 01/01/22 – 3/31/2022" fails to state a claim.

Jenkins further alleges that Rob Jeffreys and IDOC instituted a policy which forced him to travel back to the state court system without his legal documents. First, IDOC is a state government agency and is not subject to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-71 (1989); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). As to Rob Jeffreys, Jenkins alleges that he is responsible for enforcing and

implementing the 1-year policy on keeping property of inmates who are reversed and remanded for trial. But he fails to allege that the policy Jeffreys created caused him to be denied access to his documents. In fact, Jenkins alleges that the documents were not kept in accordance to the policy as Jenkins alleges both he and his mother contacted the prison within the timeframe of the policy and that officials told them that the documents were not in the prison's possession (Doc. 1, p. 9). Thus, there are no allegations to suggest that the policy itself denied Jenkins access to his documents.

Finally, it appears that Jenkins might be attempting to bring claims against the judge in his criminal case and the public defender who represented him. He has not identified these individuals in the caption of his Complaint as defendants but alleges that their actions were improper and resulted in an unfair sentence. *See Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party, a defendant must be "specif[ied] in the caption"). But it has long been established that judges, being sued solely for judicial acts, are protected by absolute judicial immunity. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001); *Dawson v. Newman*, 419 F.3d 656, 660-61 (7th Cir. 2005) ("If a judge errs 'through inadvertence or otherwise, a party's remedy is through appellate process.'"). Defense attorneys, both those who are appointed and those who are privately retained, are also not state actors as required by Section 1983. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *McDonald v. White*, 465 F. App'x 544, 548 (7th Cir. 2012). Thus, to the extent Jenkins attempts to raise claims against the judge and attorney in his criminal case, those claims are **DISMISSED with prejudice**.

For the reasons stated, Jenkins's claims are **DISMISSED without prejudice**. Jenkins will have an opportunity to submit an Amended Complaint. To aid Jenkins in this endeavor, the Clerk of Court is **DIRECTED** to send Jenkins a Section 1983 Complaint form.

### Disposition

For the reasons stated above, Jenkins's Complaint is **DISMISSED without prejudice**. He is **GRANTED** leave to file a "First Amended Complaint" on or before **October 4, 2023**. Should he fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall count as one of Jenkins's three allotted "strikes" under 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Jenkins must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Jenkins is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court

will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  September 6, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**