IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILIAM J. JENKINS,<br><br>    **Plaintiff,**<br><br>v.<br><br>ROB JEFFREY,<br>WARDEN #1 OF BIG MUDDY RIVER CORRECTIONAL CENTER,<br>WARDEN #2 OF BIG MUDDY RIVER CORRECTIONAL CENTER,<br>PROPERTY STAFF OF BIG MUDDY RIVER CORRECTIONAL CENTER (3/31/2021-12/31/2021), and<br>PROPERTY STAFF OF BIG MUDDY RIVER CORRECTIONAL CENTER (01/01/2022-03/31/2022),<br><br>    **Defendants.** | Case No. 23-cv-270-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff William J. Jenkins, a detainee at the Will County Adult Detention Facility, originally brought this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights at Big Muddy River Correctional Center ("Big Muddy"). This matter is currently before the Court on Jenkins's Motion to Readdress the Court with Second Amended Petition (Doc. 23).

### BACKGROUND

Jenkins's original Complaint (Doc. 1) was dismissed without prejudice for failure to state a claim (Doc. 14), but he was granted leave to file an Amended Complaint. His

1

Amended Complaint (Doc. 19), alleging interference with his access to the courts in violation of the First and/or Fourteenth Amendments, also was dismissed for failure to state a claim (Doc. 20). He was granted leave, up to and including March 22, 2024, to file a Second Amended Complaint. He failed to do so, and so on April 5, 2024, the Court dismissed Jenkins's case for failure to comply with a Court Order (Docs. 21, 22).

On April 26, 2024, the Court received Jenkins's pending motion to readdress the Court (Doc. 23). Jenkins acknowledges receiving the Court's Order dismissing his First Amended Complaint and granting him time to file a Second Amended Complaint (Doc. 23, p. 1). Jenkins alleges that he immediately assembled 800 pages of exhibits as well as a Second Amended Petition and submitted the documents to the Court, through the mail, in five separate manila envelopes (*Id*.). The Court received some of those filings, including documents purporting to be Jenkins's exhibits but failed to receive a Second Amended Complaint. Jenkins acknowledges that he received a letter from the Clerk of Court informing him of the receipt of his exhibits. He has now resubmitted his Second Amended Complaint and argues that the dismissal of his case should be "rescinded" because he properly submitted it in the mail prior to the deadline (*Id*. at p. 2).

## Discussion

Although styled a motion to readdress the Court, Jenkins's motion requests that the Court reconsider its previous dismissal due to errors and delays in the mailing of his filings. Jenkins argues that the delays in the mail were due to no fault of his own and he submitted his Second Amended Petition before the Court's deadline.

But even if the Court considered his amended pleading as timely filed, Jenkins

again fails to state a claim. To state a claim for denial of access to the courts, a plaintiff must demonstrate that the "defendants' conduct prejudice[d] a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). *See also Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). The "complaint should state the underlying claim [that was lost] in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued." *Christopher v. Harbury*, 536 U.S. 403, 417 (2002). The complaint must also allege the connection between the denial of access to legal materials and the inability to pursue a legitimate legal challenge. *Marshall*, 445 F.3d at 968. Further, liability under Section 1983 requires personal involvement in the deprivation of a constitutional right. *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009). A plaintiff must allege that the defendants "did something to adversely affect – to frustrate – his efforts to vindicate his rights through litigation." *Jones v. Van Lanen*, 27 F.4th 1280, 1287 (7th Cir. 2022).

Once again, Jenkins fails to allege that the lack of access to his legal boxes prejudiced a meritorious challenge to his conviction. He notes that he was successful in both his appeal of his conviction and post-conviction petition, resulting in a new sentence and then a new trial. Before he was transferred from Big Muddy to the Will County Adult Detention Facility for his new trial, he spoke to a property staff member and one of the wardens about obtaining his legal materials upon his transfer (Doc. 23, p. 23). Both told him that he had one year to obtain his legal boxes (*Id.*). Upon his transfer back to the county jail and the start of his new trial, he was assigned an assistant public defender who ultimately arranged a plea deal for Jenkins. Although Jenkins chose to enter the plea

3

agreement, he alleges that he was duped into the plea deal and erroneously agreed to stay in Illinois on parole when he wanted to leave the state (*Id*. at p. 24).

After his placement on parole, Jenkins called the property officer at Big Muddy sometime in May 2021 to request his legal boxes (*Id*. at p. 24). He agreed to pay $250.00 to ship the boxes and believed that the property officer would ship his property. He never received it. Jenkins alleges that the documents in his legal property box included copies of motions, legal documents, and "transcripts" from his original court file consisting of filings by his appointed counsel. He alleges that he also needed trial transcripts from his co-defendant's criminal proceeding but never received them from the trial court, nor was he able to retrieve them from the court reporter (*Id*. at pp. 25-26). The only documents in his possession that contained some of the transcripts from his co-defendant's trial were his amended post-petition motion, the state's response, and his counsel's reply brief (*Id*. at p. 22) He believes the transcripts were necessary to impeach the credibility of the witnesses in his case (*Id*. at pp. 22-23). Those documents were in his legal boxes at Big Muddy prior to his transfer to state court for his new trial.

Jenkins alleges as a result of being required to serve his parole in Illinois, he was arrested on another charge and placed back in custody (*Id*. at pp. 24-25). He immediately sought to overturn his plea agreement, believing that if he had not been on parole in Illinois he would not have invited the new criminal charges (*Id*. at p. 25). On December 27, 2021, he wrote IDOC director Rob Jeffreys about obtaining his legal boxes but failed to receive a response (*Id*.). His mother contacted Big Muddy in order to obtain his legal boxes to no avail (*Id*.). He submitted a *pro-se* post-conviction petition without his legal

4

documents and was appointed counsel to submit a proper pleading (*Id*.). Despite not having access to the original transcripts from the judge overseeing the post-conviction petition, he believed that his other "legal documents" were "priceless when pursuing all [of his] legitimate legal challenges" (*Id*. at pp. 25-26). Although he never received his legal materials from Big Muddy, Jenkins alleges that he did receive copies of the original post-conviction petition and responses from his assigned counsel (*Id*. at pp. 26-27). Jenkins acknowledges that the documents were nearly identical to those in his property storage box at Big Muddy.

Jenkins's post-conviction petition was ultimately dismissed (*Id*. at p. 27). Although he has appealed the dismissal and been assigned counsel, Jenkins alleges that if he had impeachment statements from the post-conviction petition, he could have presented the arguments in his most recent post-conviction petition himself rather than rely on assigned counsel (*Id*. at p. 28). He also believes he might have come up with additional arguments to present in his petition if he had timely access to all of his documents.

Even construing Jenkins's claims liberally, Jenkins fails to allege that the failure to transfer his legal boxes "caused a potentially meritorious claim to fail." *Marshall*, 445 F.3d at 969. Jenkins argues that he needed his co-defendant's trial transcripts to successfully file a post-conviction petition to reverse his plea, but Big Muddy never had Jenkins's trial transcripts. Jenkins makes clear that he tried and failed to obtain the trial transcripts from both the trial court and the court reporter. He never had a copy of the trial transcripts nor were the trial transcripts in his legal property box.

Instead, Jenkins argues that what was housed in his legal box at Big Muddy were

5

his assigned counsel's amended post-trial motion, the state's response, and assigned counsel's reply brief (Doc. 23, p. 22). Those documents contained some, although not all, of his co-defendant's trial transcripts (*Id*. at pp. 22-23, 26). Although he never retrieved those documents from Big Muddy, Jenkins acknowledges that he eventually had access to those documents from his assigned counsel during his post-conviction proceedings and that his assigned counsel utilized the documents in filing Jenkins's brief in that proceeding (*Id*. at p. 26). Thus, it appears that Jenkins had the documents at issue in this case prior to submitting his brief. Although his post-conviction petition was ultimately dismissed, and his claims are currently on appeal, there is simply nothing in the record that the proceedings were frustrated by not having earlier access to the documents at issue. Jenkins argues that he could have proceeded with an earlier petition or could have identified additional arguments to raise in his petition, but he fails to identify those additional arguments. He also fails to allege what additional motions and legal documents were housed in his legal box that he believes would have changed his arguments in his post-conviction proceedings. Nothing in the amended pleading suggests that his pursuit of his post-conviction petition was frustrated by his lack of access to his legal box.

Further, as the Court previously stated with his First Amended Complaint, Jenkins fails to allege any personal involvement by the defendants. Although he alleges that he spoke to one of the three wardens at Big Muddy prior to his remand to state court, he fails to allege that any of the wardens were personally involved in the transfer of his documents. The warden merely informed Jenkins of the process for obtaining his

documents. He also points to a property officer that he spoke with both prior to his transfer and after his release. Although Jenkins alleges that the property officer told Jenkins that his documents would cost $250.00 to ship and Jenkins approved the shipment, there is no indication that Jenkins finalized or paid for the shipment of his documents. Nor does the pleading suggest that the property officer played any role in actually mailing the documents or mishandling the documents. Jenkins further alleges he wrote a letter to the IDOC director, but the allegations do not suggest that the director received the letter or had any personal involvement with property boxes at Big Muddy. Similarly, Jenkins alleges that his mother sought to contact Big Muddy, but the pleading fails to indicate whom she spoke to at the prison or the involvement of any official in handling Jenkins's legal boxes in response to those inquiries. There is simply nothing in the pleading suggesting that the identified individuals deprived Jenkins of his legal boxes. Thus, even if the Court considered his Second Amended Petition (Doc. 23, pp. 8-29), Jenkins once again fails to state a claim. This is Jenkins's third attempt to state a claim, and he has been unable to do so. Thus, his pleading was properly dismissed.

## CONCLUSION

Accordingly, Jenkins's Motion to Readdress the Court with Second Amended Petition (Doc. 23) is **DENIED**.

**IT IS SO ORDERED.**

DATED: April 30, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**